## In re TEMTOR CORN & FRUIT PRODUCTS CO.

(District Court, E. D. Missouri, E. D.   April 5, 1924.)

No. 3602.

1. **Internal revenue** ⊕⇒7—**Commissioner of Internal Revenue cannot prescribe what constitutes affiliation of corporations, for purpose of requiring consolidated return for income tax.**

Question of fact of affiliation of corporations under Revenue Act 1918, § 240 (Comp. St. Ann. Supp. 1919, § 6336⅛ss), is a matter of judicial construction, and not a matter of administrative regulation, to be prescribed by the Commissioner of Internal Revenue for income tax purposes, and Commissioner can only regulate as to manner of making return, notwithstanding section 1309 (Comp. St. Ann. Supp. 1919, § 6371½i).

2. **Constitutional law** ⊕⇒80(2)—**Internal revenue** ⊕⇒7—**Commissioner of Internal Revenue had no power to say that substantially all stock of another corporation meant 95 per cent.**

Under Revenue Act 1918, § 240 (Comp. St. Ann. Supp. 1919, § 6336⅛ss), requiring consolidated returns, when one corporation owns substantially all of the capital stock of the other, the Commissioner of Internal Revenue had no power to say by regulation that "substantially all of the stock of the other" means "95 per cent. of the voting stock," that being a matter for the courts.

3. **Internal revenue** ⊕⇒5—**No one to be taxed, unless statute exists authorizing tax.**

No one is to be taxed, unless there is a statute which authorizes imposition of tax.

4. **Statutes** ⊕⇒245—**Statute imposing tax to be given reasonable construction.**

A statute authorizing the imposition of a tax is to be given a reasonable construction, with a view of carrying out its purpose and intent.

5. **Internal revenue** ⊕⇒7—**Affiliation between corporations, requiring joint return for income tax, contemplated voting stock only.**

Revenue Act 1918, § 240 (Comp. St. Ann. Supp. 1919, § 6336⅛ss), providing for joint return by affiliated corporations, contemplates ownership of voting stock only, or such stock as carries control by one corporation over its affiliated corporation.

In Bankruptcy. In the matter of the estate of the Temtor Corn & Fruit Products Company, bankrupt. Petition for review of allowance of claim of the United States for balance on income taxes for 1920. Petition denied, and report of referee confirmed.

Referee's Opinion on Motion of Trustee to Disallow Claim of the United States.

The United States has filed a claim against the bankrupt for $36,695.23 for income and excess profits taxes for the year 1920, and the trustee in bankruptcy has filed written objections to the allowance of the claim. The issues presented can, perhaps, be more clearly defined by stating at the outset certain of the facts relating to the claim as disclosed by the evidence:

The bankrupt, Temtor Corn & Fruit Products Company, and the Best-Clymer Manufacturing Company, now also in bankruptcy, filed a consolidated return for the calendar year 1920, and this return proceeded upon the assumption that the Temtor Company was the parent corporation and the Best-Clymer Company its subsidiary. The income and excess profits taxes for both companies were assessed as a unit upon the basis of this return at the sum of $114,688.30. The Temtor Company paid three quarterly installments upon the taxes so assessed, but did not pay the fourth quarterly installment, which in normal course should have been paid in December, 1921. In December, 1922, the Commissioner of Internal Revenue made an addi-

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tional assessment of income and excess profit taxes for the year 1920 in the sum of $12,713.35. This additional assessment was made upon the basis of the consolidated return before mentioned, and resulted from the disallowance of certain items of plant depreciation included in the return. The claim of $36,695.23 now asserted by the government is made up of the unpaid fourth installment of the taxes for 1920, with certain adjustments for overpayment for the year 1919 and for interest, $23,981.88, together with the additional assessment, $12,713.35, above mentioned.

The trustee in bankruptcy urges three principal objections to the allowance of the government's claim: (1) That among the items of income embraced in the consolidated return is an item of "rental $1,240,000," and that $1,000,000 of this sum was improperly reported as income of the Temtor Company, and should be excluded in determining the amount of income and excess profits taxes properly payable. (2) That upon the facts here presented a consolidated return for the Temtor Company and the Best-Clymer Company was not proper, and not warranted by law. (3) That, even though a consolidated return was proper, the government was required to apportion the tax as between the two companies. For the information of counsel the referee will state the conclusion reached by him upon each of the objections urged on behalf of the trustee in bankruptcy.

(1) Upon the facts in evidence the referee is of the opinion that the item of $1,240,000 rent reported as income of the Temtor Company was properly returned as income and taxable as such. From the facts in evidence the referee concludes that the stipulated rent was not only rent in form, but had all the essential characteristics of rent, and was rent in substance, and hence was properly returned as income by the Temtor Company. In the contract between the Corn Products Refining Company and the bankrupt company, the rent to be paid by the former to the latter is stipulated as an integral sum, and in the opinion of the referee the evidence affords no sufficient basis for treating any determinate portion of the stipulated rent as "fictional" rent, and hence not properly income, as contrasted with another determinate portion to be treated as "bona fide" rent, and hence properly income. In the opinion of the referee the trustee has not made such a showing as will warrant him in finding that any part of the $1,240,000 rent returned as income was not properly income and taxable as such.

(2) It is further contended on behalf of the trustee in bankruptcy that upon the facts here presented a consolidated return for the Temtor Company and the Best-Clymer Company was not warranted by law, and that the government's claim should be allowed upon the basis of the taxable income of the Temtor Company considered separately. In considering this objection reference must be made to certain pertinent provisions of the statutes. The Revenue Act of 1918, in section 240 (Federal Statutes Annotated 1919 Supplement, p. 114 [Comp. St. Ann. Supp. 1919, § 6336⅛ss]) provides:

"(a) That corporations which are affiliated within the meaning of this section shall under regulations to be prescribed by the Commissioner with the approval of the Secretary make a consolidated return of net income and invested capital for the purposes of this title and title III and the taxes thereunder shall be computed and determined upon the basis of such return.
* * *

"In any case in which a tax is assessed upon the basis of a consolidated return the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement then on the basis of the net income properly assignable to each.
* * *

"(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all of the stock of the other or others or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

Section 1309 of the same act (Federal Statutes Annotated 1919 Supplement, p. 185 [Comp. St. Ann. Supp. 1919, § 6371½i]) provides:

"That the Commissioner, with the approval of the Secretary, is hereby authorized to make all needful rules and regulations for the enforcement of the provisions of this act."

The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, has promulgated certain regulations in the assumed exercise of the authority bestowed by the act, and among these are regulations pertaining to consolidated returns of affiliated corporations. A regulation promulgated April 17, 1919 (Reg. 45, art. 633), provides:

"The owning or controlling of 95 per cent. or more of the outstanding voting capital stock (not including stock in the Treasury) at the beginning of and during the taxable year will be deemed to constitute an affiliation within the meaning of the statute. Consolidated returns may, however, be required even though the stock ownership is less than 95 per cent. When the stock ownership is less than 95 per cent., but in excess of 50 per cent., a full disclosure of affiliations should be made, showing all pertinent facts, including the stock owned in each subsidiary or affiliated corporation and the percentages of such stock owned to the total stock outstanding. Such statement should preferably be made in advance of the filing of the return with a request for instructions as to whether a consolidated return should be made."

The Revenue Act of 1921 (Federal Statutes Annotated 1921 Supplement, p. 157 [Comp. St. Ann. Supp. 1923, § 6336⅛ss]) re-enacts section 240 of the act of 1918, and although the later statute makes consolidated returns optional with the taxpayer after January 1, 1922, it defines affiliated corporations in the same terms as the earlier statute.

The evidence shows that the Best-Clymer Manufacturing Company, during the period here in question, had outstanding 8500 shares of preferred stock, held by about 300 stockholders, and 18,500 shares of no par value common stock, all of which was owned by the Temtor Company. The preferred stock had no voting rights, except in the contingency that dividends should remain in default for two consecutive years, and while dividends are maintained upon the preferred stock the sole voting rights rested with the common stock. The evidence shows that there had been no default in the payment of dividends upon the preferred stock prior to the filing of the consolidated return here in question. The evidence further shows that about 3,000 stockholders owned the stock of the Temtor Company. It does not appear that any particular stockholder, or associated group of stockholders, owned any considerable amount of the preferred stock of the Best-Clymer Company or of the stock of the Temtor Company. It further appears from the evidence that during the period here in question the directorate and officers of the two companies were practically the same.

Upon the foregoing facts it is clear that the Temtor Company and the Best-Clymer Company were affiliated corporations as defined in the regulation promulgated by the Commissioner of Internal Revenue, and, if this regulation was a valid one, the filing of a consolidated return by the two companies was required and was proper. But the trustee in bankruptcy insists that the statute declares that corporations "shall be deemed to be affiliated (1) if one corporation owns * * * substantially all of the stock of the other," and that the Commissioner of Internal Revenue exceeded his authority in assuming to put in force the regulation here in question.

There can be no question that, if the statute is to be construed literally, this contention of the trustee is a sound one. On the other hand, it must be conceded that it is within the province of legitimate construction to limit the literal meaning of the words employed in a statute, where, upon a view of the statute as a whole, it is apparent that the objects sought to be accomplished or the evils intended to be remedied by the legislation require that course to be followed. Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226. Is there anything in the purpose sought to be accomplished by the provisions of the statute here in question which can be properly held to justify the action of the Treasury Department in assuming to restrict the literal meaning of its terms? In providing for a consolidated return by affiliated corporations, did Congress intend that income and excess profits taxes should be computed as a unit where there is practical

*unity of ownership?* Or did Congress intend by this provision to safeguard the interest of the government against the possible loss of revenue which might result from the evasion of the excess profits tax through the manipulation and shifting of profits as between two or more closely associated corporations where there is actual or potential *unity of control* of corporate affairs? There are several official declarations by the Commissioner of Internal Revenue, the officer charged with the duty of administering the statute, which indicate that in his view the latter was one of the important purposes sought to be accomplished by the provisions of the statute here in question    Reference is made to these rulings of the Commissioner in Holmes, Federal Income Tax, pp. 293, 294.

Furthermore, under the act of 1921 the filing of consolidated returns by affiliated corporations is made optional with the taxpayer, after January 1, 1922, and in explaining the purposed change in the law the chairman of the finance committee of the Senate stated in its report that "the making of a consolidated return is necessary to prevent evasion under the excess profits tax, but this necessity will disappear when the excess profits tax is repealed." See Report of Finance Committee on Internal Revenue Bill of 1921, p. 20. This statement tends to support the view that at least one of the ends sought to be accomplished by requiring a consolidated return in the case of affiliated corporations was to prevent the manipulation and shifting of profits where there is unity of control.

It is well settled that, in cases where there is uncertainty as to the meaning of a statute, the practical construction given the statute by the executive officers of the government charged with its administration will be accorded great weight in its judicial construction. United States v. Hermanos & Company, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821; Jacobs v. Prichard, 223 U. S. 200, 32 Sup. Ct. 289, 56 L. Ed. 405; United States v. Hammers, 221 U. S. 220, 31 Sup. Ct. 593, 55 L. Ed. 710. It has already been pointed out that, after the Commissioner of Internal Revenue had promulgated the regulation here in question, assuming to define the words "substantially all the stock," and after this regulation had been in force for some years, Congress by the Revenue Act of 1921 re-enacted section 240 of the Revenue Act of 1918, defining affiliated corporations in the same terms as in the act of 1918. Upon well-established principles this must be deemed a legislative recognition and adoption of the construction given this provision of the statute by the Commissioner of Internal Revenue. United States v. Falk, 204 U. S. 143, 27 Sup. Ct. 191, 51 L. Ed. 411; United States v. Hermanos & Company, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821. In view of the considerations mentioned, I conclude that the regulation of the Commissioner of Internal Revenue with respect to consolidated returns of affiliated corporations was a valid one, so far as applicable to the facts of this case, and that the corporations here in question acted properly in making a consolidated return.

(3) It is finally contended on behalf of the trustee in bankruptcy that, even though the tax here in question was properly computed on the basis of the consolidated return, the government in making the assessment should have apportioned the tax between the two companies, as provided in section 240 of the Revenue Act of 1918. The evidence shows that the tax was computed as a unit, and was not apportioned, but was all assessed against the Temtor Company    Under the statute it was proper for the two corporations concerned to agree as between themselves as to the proportion of the entire tax to be assessed against each. As the entire tax appears to have been assessed against the Temtor Company, and as that company, without objection or request for an apportionment, paid three quarterly installments of the tax, it must be inferred that both companies agreed to the assessment as made.  As already stated, the companies had practically the same officers and directors, and the course followed by them was the legal equivalent of an agreement and request that the entire tax be assessed against the Temtor Company.  In the present posture of the case, I do not think it is open to either company to object to the course taken by the government in assessing the tax.

My general conclusions are that the government's claim, as here asserted, is a valid one, that none of the objections made to the claim are tenable, and that the claim should be allowed as a preferred claim for taxes due the

United States in the sum of $36,695.23, with interest thereon at the rate of 6 per cent. per annum from January 1, 1923, until the date of payment.

Jones, Hocker, Sullivan & Augert, of St. Louis, Mo., for petitioner.

Allen Curry, U. S. Dist. Atty., and Wm. J. Blessè, Asst. U. S. Dist. Atty., both of St. Louis, Mo., for the United States.

W. B. & Ford W. Thompson and Randolph Laughlin, all of St. Louis, Mo., amici curiæ.

FARIS, District Judge (in memorandum). There was presented to the court some time since a petition for review of allowance of the claim of the United States for balance on income taxes for 1920. The referee allowed the claim of the United States against the bankrupt for an alleged balance of some $36,000 for income taxes for the year stated. The trustee in bankruptcy immediately sued out a petition for review of this order of the referee, and, as said, this was heretofore argued and submitted to the court.

There are three questions presented by the briefs of counsel in the case, and argued pro and con. These are: Did the sum of $1,000,000, deducted from the purchase price of the Granite City glucose plant, constitute rent for that plant, or was it a part payment of the purchase price thereof? Second. Was the bankrupt required to make a joint income tax return with the Best-Clymer Company, an alleged affiliated corporation? Third. Was it estopped to deny that it was compellable to make such joint return, having in fact made that sort of return voluntarily?

The referee, in the report which he has filed with the court, has very ably discussed all three of these points, or, at least, enough of them to reach a conclusion. I might, so far as the result which is in my mind is concerned, adopt as my conclusion the conclusion reached by the referee; but, regrettably, I am unable to concur in all of the conclusions of law which he has reached, and I have thought it advisable, therefore, to state my own reasons for the conclusion that I have come to.

Without going into the evidence adduced, I find no particular fault with the findings and conclusions of the referee touching the facts. But, as forecast, I have in mind different reasons for the conclusions that I have come to, especially upon the question of whether there ought to have been made a consolidated or joint return. The statute (Comp. St. Ann. Supp. 1919, § 6336⅛ss) provides that a consolidated return shall be made when one corporation owns "substantially all of the stock of the other."

[1] The statute also provides that the Commissioner of Internal Revenue shall require consolidated returns from affiliated corporations under regulations which he is empowered to prescribe. But the question of the fact of affiliation is left, by the very definition of what constitutes affiliation, even in the statute itself, a matter of judicial construction, and not a matter of administrative or departmental regulation; for the language of the section is:

"That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner, * * * make a consolidated return."

Further on in this section there is a statutory definition of what constitutes affiliation. So it is too obvious for argument that it is not left to the Commissioner to prescribé what constitutes affiliation, for the statute fixes that, but what is left to be prescribed by the Commissioner's regulation is the manner of the making of the return. In short, the law itself says *who* shall make a consolidated return. The Commissioner may only say *how* such return shall be made.

[2] The Commissioner, then, had no power to say, as he has said by his regulation, that "substantially all of the stock of the other" means "95 per cent. of the voting stock." It is a matter for the courts to construe, and not a matter about which the Commissioner ·may promulgate a regulation binding upon the courts.

[3, 4] Here in this case all of the voting stock was held by the bankrupt, though there were some 3,000 other stockholders holding preferred stock, which had no vote until dividends were passed for a stated period. I readily appreciate that the control of one corporation over another is ordinarily had by reason of control of the voting stock therein, and not through control of the nonvoting stock. It is also true that no one is to be taxed, unless there exists a statute which authorizes the imposition of the tax. Such a statute is, however, to be given a reasonable construction, when it in fact exists, with a view to carrying out its purpose and intent. Here the purpose of Congress was to forestall such manipulation·of profits of one corporation, through control by reason of voting stock, as would prevent the government from ascertaining correctly, and from collecting the sums justly due it, from excess profit taxes, of the controlled and affiliated corporations.

[5] I reach, then, but by another method, the conclusion reached by the referee; that is, that Congress had in mind voting stock only, or such stock as carried control by one corporation over its affiliated corporation. Unless this was the purpose and meaning of Congress, the statute is practically worthless and wholly incapable of enforcement. From what is said, it follows that the construction of the word "substantially" is also a matter for the courts, however valuable as a rule of practice and administration it may be to have fixed by the . Commissioner a merely arbitrary standard.

The petition for review ought to be denied, and the report of the referee confirmed, which is accordingly ordered.