CORSICANA GAS & ELECTRIC CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4499. Promulgated March 22, 1927.

Under the evidence herein, the petitioner is entitled to deduct a reasonable allowance for obsolescence of its power plant.

*G. Drummond Hunt, Esq., J. C. Harris, C. P. A.,* and *Loyd B. Smith, Esq.,* for the petitioner.
*Benjamin H. Saunders, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in income and profits taxes for the year 1919 in the amount of $3,570.31. The question involved is the amount of the deduction to which the petitioner is entitled as an allowance for the exhaustion, wear and tear, including obsolescence, of certain assets owned by it.

FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of Texas, with its principal office and place of business at Corsicana, Tex. During the years mentioned herein its business was to generate electricity and convey it over its distribution lines to customers, the electricity so generated and conveyed being used for street lighting and for commercial and domestic purposes.

The petitioner's power plant was constructed and installed in the year 1904 and consisted of two units of a capacity of 150 kilowatts each. A unit consisted of an engine and a generator, and the two

units were operated by a battery of three boilers. In the year 1910 one of the units was discarded and was replaced by a larger unit of 250 kilowatts capacity and another boiler was added. After this change the plant contained two units consisting of two engines, two generators and four boilers, with a total capacity of 400 kilowatts. The engines in the plant were of the reciprocating type.

During the years 1904 to 1913, inclusive, the petitioner produced in its own plant the electric current which it conveyed over its distribution lines and sold to its customers. However, in the year 1913, the Texas Power & Light Co., hereinafter called the Power Company, built a high-voltage power line into Corsicana, and the petitioner, finding that it could purchase electric current from the Power Company at a lower cost than it could produce current in its own plant, entered into a contract with the Power Company whereby the Power Company agreed to furnish the petitioner the current it required in order to supply its customers. In the year 1913 the petitioner held a franchise from the City of Corsicana which required it to furnish good and dependable service.

The contract between the petitioner and the Power Company was for a term of forty years from and after 1913, but at the end of ten years from the date of the contract the petitioner had the right to modify or cancel it. One of the inducements offered by the Power Company to the petitioner to enter into the contract was that the Power Company would build a second high-voltage power line into Corsicana. After the petitioner began buying current from the Power Company, it was necessary for the petitioner to retain and maintain its own plant to generate current for the use of its customers whenever there was an interruption of current furnished by the Power Company, and the petitioner's plant was, during the years 1914 to 1923, inclusive, used only for that purpose.

The petitioner expected to sell or otherwise dispose of its power plant as soon as the Power Company should build a second high-voltage line into Corsicana, because its plant would not then be required as a reserve. However, on account of the financial stringency due to the outbreak of the World War in 1914, the Power Company did not then build a second high-voltage power line, although it continued to promise, and the petitioner believed, that it would be built. In the year 1918, the Power Company began paying the petitioner a large part of the expense of maintaining and operating its plant, because of the Power Company's failure to build a second high-voltage line.

During the years 1914 to 1917, inclusive, the petitioner, when interruptions occurred in the service furnished by the Power Company, was able to give fairly satisfactory service to its customers through the operation of its own power plant, although in the year 1917

the maximum demand for several months exceeded the capacity of the petitioner's plant. In the year 1918 the demand for current exceeded the capacity of the petitioner's plant in every month except one, and in that month the demand equaled the capacity. In November, 1918, the demand for current was more than double the capacity of the petitioner's plant, and in December, 1918, it reached 1,055 kilowatts. In every month during the year 1919 the maximum demand for current was more than twice the capacity of the petitioner's plant, and the demand continued to increase after that year. At no time after April, 1918, was the capacity of the petitioner's plant adequate to supply the demand of its customers, and in the event of interruption in the service of the Power Company, the petitioner was compelled to divide the City of Corsicana into circuits and to furnish current to one part of the city at a time, thereby leaving the other parts of the city without current at that time.

At or prior to the beginning of the year 1919, there were in Texas several large power plants for the generating and transmission of electric current. One was the plant of the Power Company at Dallas, one was at Houston, and another was at San Antonio. As a result of the construction and operation of these large central power plants, smaller companies, such as the petitioner, purchased current at less cost than they could produce it in their own plants. On account of this fact the market for small plants, like the one owned and operated by the petitioner, was limited and their sale value was diminished. Furthermore, internal combustion engines were at that time being used in generating electricity instead of the reciprocating engines used by the petitioner.

At the beginning of the year 1919, the petitioner's officers knew that if a second high-voltage power line were not built into Corsicana by the Power Company in or before the year 1923, the petitioner's plant would have to be rebuilt in order to meet the demands of its customers. It was also known by the petitioner's officers that it would not be practicable to rebuild the plant before 1923 because it was under contract to purchase current from the Power Company until that time. In the year 1919 it was believed by the petitioner's officers that in the event the petitioner's plant were rebuilt it would not be economically advantageous to add additional units to its existing plant, because such additional units would be of a more up-to-date type of machinery and could not be profitably operated in connection with the old machinery. In the year 1919 it was known to the petitioner's officers that if a second high-voltage power line were built into Corsicana by the Power Company in or before the year 1923, the petitioner's plant would have no further useful value and would have to be junked or sold.

The Power Company built the second high-voltage power line into Corsicana in the year 1923, and until that time the petitioner continued to use its plant as a reserve. When the second high-voltage line was built by the Power Company the petitioner had no further use for its plant and, therefore, after attempting without success to sell its plant, it had the plant wrecked and salvaged it for its junk value.

In his answer to the petitioner's amended petition the respondent admitted that he made an error in computing the deduction to which the petitioner is entitled for the year 1919, on account of the exhaustion, wear and tear of its distribution system, and that the deduction as heretofore computed should be increased by the amount of $390.08.

## OPINION.

MARQUETTE: The parties hereto appear to be in accord as to the cost of the petitioner's power plant, the rates that have been used in computing the exhaustion, wear and tear thereof, and the depreciated cost as of December 31, 1918, using those rates. The petitioner contends, however, that the allowance made by the respondent for exhaustion, wear and tear of the plant during the year 1919 is inadequate in that it does not take into consideration the fact that the plant was obsolescent in the year 1919 and became obsolete in the year 1923. The respondent denies that the plant was obsolescent in the year 1919.

Section 234 (a) (7) of the Revenue Act of 1918 provides that, in computing the net income of a corporation subject to tax, there shall be allowed as a deduction " a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence," and it is under the authority of that provision that the allowance involved herein is claimed.

Obsolescence is a state or process of becoming obsolete. It is a process more or less gradual, and a deduction is spread over the years from the time the process begins until the property becomes obsolete. *Appeal of Jackson County State Bank*, 2 B. T. A. 1100. However, whether or not property belonging to a taxpayer is obsolete is a question of fact to be determined from the evidence in each case. In the *Appeal of Columbia Malting Co.*, 1 B. T. A. 999, we had occasion to pass upon the question of obsolescence of property used in a trade or business and the discussion therein is applicable here. In that appeal we said:

In order that the taxpayer may be entitled to the obsolescence deduction in the years involved, there must have been substantial reasons for believing that the assets would become obsolete prior to the end of their ordinary useful life, and second, it must have been known, or believed to have been known,

to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur. The purpose of the statute is to permit the capital invested in assets to be returned to a taxpayer out of earnings over the life of the property in the business. A reasonable deduction is allowed on account of the exhaustion, wear, and tear of property. This includes obsolescence, if the property is becoming obsolete, so that by the time it reaches that state the entire cost thereof will be restored. While it is known that physical property is ordinarily subject to exhaustion, wear, and tear from use in the business, it may not be known that it is also becoming obsolete. Whether it is, is a question of fact in each case. When it is found that property is becoming obsolete, a deduction on that account can only be determined by ascertaining, as accurately as possible, when the property may be expected, under the circumstances, to be no longer commercially useful notwithstanding its physical condition. In the case of a deduction on account of exhaustion, wear and tear of property used in the business, if it can not be determined that the property is subject to wear, tear, and exhaustion, or what the approximate life of the property, under all the facts and circumstances, is, there is no basis for determining the deduction. With respect to obsolescence, if it can not be determined that the assets will become obsolete prior to the estimated date of the physical exhaustion thereof, or if a reasonably definite date can not be ascertained, there are no means of determining what is a reasonable allowance on that account.

We are satisfied from the evidence presented herein that the petitioner's power plant became obsolete in the year 1923, and that the process or state of obsolescence began as early as January 1, 1919, and was known to the petitioner's officers at that time. During the years 1917 and 1918, the demand for electric current on the part of the petitioner's customers became so great that it was manifest that by the year 1923 the petitioner would either have to acquire more adequate service through the medium of a second high-voltage power line to be built by the Power Company, or rebuild its own plant. The petitioner's contract with the Power Company was subject to adjustment or cancellation in the year 1923. If the Power Company should build a second high-voltage line by that time the petitioner would be assured of current adequate for its needs at a less cost than it could produce current in its own plant, and in that event its plant would be obsolete and worthless. If the Power Company should fail to construct a second high-voltage line by the year 1923, the petitioner would be compelled to generate current to supply its customers and would be under the necessity of constructing an entirely new plant for that purpose, as its existing plant was wholly inadequate and it was not economically feasible to add additional units thereto. In any event, it was known to the petitioner's officers as early as the year 1919, at least with a reasonable degree of certainty, that the petitioner's plant would become obsolete in the year 1923, and would have to be sold or dismantled. We are, therefore, of the opinion that the petitioner is entitled in computing its net income for the year 1919, to deduct a reasonable allowance for the obsolescence of its plant.

We will not attempt here to determine the rate that should be used in computing the allowance to which the petitioner is entitled on account of the obsolescence of its power plant. It appears that the respondent has determined that the useful life of the unit installed in 1904 will expire in 1927; that the useful life of the unit installed in 1910 will expire in 1939, and that the allowance for exhaustion, wear and tear has been computed on each unit separately. However, as we have stated above, there appears to be no dispute as to the depreciated cost or value of those units at December 31, 1918, and we therefore hold that the allowance for exhaustion, wear and tear, including obsolescence, of these units for the year 1919 should be an amount equal to one-fifth of their depreciated cost or value as of December 31, 1918. An allowance of the same amount and for the same purpose in each of the years 1920, 1921, and 1922, would leave the remaining one-fifth of such depreciated cost to be recovered for the year 1923.

The deduction heretofore allowed by the respondent for the exhaustion, wear and tear of the petitioner's distribution system for the year 1919 should be increased by the amount of $390.08.

*Judgment will be entered on 15 days' notice, under Rule 50.*