CONLEY TIN FOIL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15693.   Promulgated August 6, 1929.

*Mark J. Ryan, Esq.*, for the petitioner.
*Stanley Suydam, Esq.*, for the respondent.

OPINION.

MARQUETTE: We find no error in the respondent's determination that the petitioner is not entitled to any deduction for amortization with respect to its supply contract with the American Tobacco Co. The evidence shows that the 42,000 shares of its capital stock that the petitioner gave to the American Tobacco Co. did not have a market value in excess of the value of the property acquired in exchange for it. Conceding that the petitioner had no use for the Standard Foil Co.'s plant, and also that the petitioner would not have taken over the Standard Foil Co. except as a means of securing the supply contract from the American Tobacco Co., the transaction was, nevertheless, only an exchange of stocks of approximately equal value. The book value of any capital stock may or may not correspond to its market value. The latter, as the term implies, is the value which the stock has on the market—what it will sell for. In the present case the petitioner's stock was actively bought and sold on the Curb Market throughout the year 1920 and the early part of 1921. It showed a steady decline during the year 1920 and on December 31 of that year, when it is claimed to have had a book value of $22 per share, it sold on the market for not more than $11.75 per share, and during the week of January 19, 1921, when the contracts in question were executed it sold at an average price of $14.625 per share. On that basis, and that is the basis by which we must be guided, the 42,000 shares which the petitioner exchanged for the Standard Foil Co.'s stock and obligations, did not have any value greater than that of the property acquired in exchange for it. Therefore, the supply contract cost the petitioner nothing and there is nothing to amortize. See *Kaufmann & Baer Co.* v. *Heiner*, 34 Fed. (2d) 698.

The second issue raised herein is whether the petitioner was, during the year 1923, affiliated with Aluminum Rolling Mills, Inc., within the meaning of section 240 (c) of the Revenue Act of 1921, which provides that:

(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The petitioner owned outright 75 per cent of the capital stock of the Aluminum Rolling Mills, Inc. The petitioner financed the latter company, furnishing it all the money for its operations, without interest; did all the buying and selling for it, and furnished all the officers and office organization. The Aluminum Rolling Mills, Inc., banked through the petitioner, having no separate account of its own, and was unknown to the trade and had no credit standing.

It was, in fact, the aluminum foil branch of the Conley organization. The 25 per cent of the capital stock not owned by the petitioner was the class B stock held by Dr. Lauber in Switzerland. This stock was never voted and it appears that Lauber was a quiescent minority and was content that the Conley organization should control and operate the corporation. This control, however, is not the control contemplated by the statute, and where there is a substantial minority, unless there is a control of the stock of such minority, there is no affiliation of the corporation. In *Ice Service Co.* v. *Commissioner*, 30 Fed. (2d) 230, it was stated:

Congress has declared that two corporations shall be treated as one for tax purposes when one corporation owns or controls substantially all the stock of the other or when substantially all the stock is owned or controlled by the same interests. Judicial interpretation may perhaps limit the statutory language to voting stock, as was held *In Re Temtor Corn Etc., Products Co.*, 299 Fed. 326 [U. S. Tax Cases, 2nd Supp. 1325] aff'd. sub. nom. *Schafly* v. *United States*, 4 Fed. (2d) 195 (C. C. A. 8), but we are not to confuse control of the corporation with control of the stock. The test is not declared to be control of the business or the policies of the subsidiary corporation but substantial identity of interest in the enterprise. The theory of affiliation, resulting in a consolidated return for taxes, is that the income and invested capital are really the income and capital of a single enterprise though carried on through the instrumentality of several corporations. See Art. 631, Treasury Regulations, 1920 Edition; Holmes, Fed. Taxes, 6th Ed. 281; *Alameda Inv. Co.* v. *McLaughlin*, 28 F. (2d) 81 (N. D. Cal.). Only when the outside interest, that is, the interest of the minority, is so small as to be practically negligible, are the two corporations to be treated as in receipt of a single income requiring a consolidated return.

Again, in *Commissioner* v. *Adolph Hirsch & Co.*, 30 Fed. (2d) 645, the same court stated:

The management of the business of the corporation is not the control required by the statute. It refers to stock control. The fact that the minority is acquiescent and permits the majority to manage the business does not prove actual control over the minority interest. Nor does a control based upon friendship or professional relations satisfy the statute. The control of the stock owned by the same interest refers to beneficial interest. This meaning is consistent with the purpose of the statute to extend to those subject to the hazard of the enterprise, when they are substantially one and the same, the benefit of the consolidated reports.

These excerpts set forth what we conceive to be the theory of affiliation, and in the instant case the ownership of 75 per cent of the capital stock of the Aluminum Rolling Mills, Inc., by the petitioner with no control over the minority stock does not constitute the ownership or control of substantially all of the stock of the two corporations, as required by the statute, and we must therefore confirm the action of the respondent in denying the right to file consolidated returns. *Goldstein Bros. Amusement Co.*, 3 B. T. A. 408.

The third and last issue is whether the petitioner is entitled to deductions in the years 1920 to 1923, inclusive, for obsolescence of certain of its buildings and equipment. The deductions are claimed under section 234 (a) (7) of the Revenue Act of 1921, which provides that there shall be allowed as a deduction, "A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance. for obsolescence."

Obsolescence is a state or process of becoming obsolete. It is a process more or less gradual and a deduction therefor is spread over the years from the time the process begins until the property becomes obsolete. *Jackson County State Bank*, 2 B. T. A. 1100. However, whether or not property belonging to a taxpayer is obsolete is a question of fact to be determined from the evidence in each case. In *Columbia Malting Co.*, 1 B. T. A. 999, we had occasion to pass upon the question of obsolescence of property used in a trade or business and the discussion therein is applicable here. In that case we said:

In order that the taxpayer may be entitled to the obsolescence deduction in the years involved, there must have been substantial reasons for believing that the assets would become obsolete prior to the end of their ordinary useful life, and, second, it must have been known, or believed to have been known, to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur. The purpose of the statute is to permit the capital invested in assets to be returned to a taxpayer out of earnings over the life of the property in the business. A reasonable deduction is allowed on account of the exhaustion, wear and tear of property. This includes obsolescence, if the property is becoming obsolete, so that by the time it reaches that state the entire cost thereof will be restored. While it is known that physical property is ordinarily subject to exhaustion, wear and tear, from use in the business, it may not be known that it is also becoming obsolete. Whether it is, is a question of fact in each case. When it is found that property is becoming obsolete, a deduction on that account can only be determined by ascertaining, as accurately as possible, when the property may be expected, under the circumstances, to be no longer commercially useful notwithstanding its physical condition. In the case of a deduction on account of exhaustion, wear and tear of property used in the business, if it can not be determined that the property is subject to wear, tear and exhaustion, or what the approximate life of the property, under all the facts and circumstances, is, there is no basis for determining the deduction. With respect to obsolescence, if it can not be determined that the assets will become obsolete prior to the estimated date of the physical exhaustion thereof, or if a reasonably definite date can not be ascertained, there are no means of determining what is a reasonable allowance on that account.

See, also, *Corsicana Gas & Electric Co.*, 6 B. T. A. 565. We are satisfied from the evidence that it was known to the petitioner's officers as early as the year 1920 that certain of the petitioner's buildings and equipment were obsolescent and that they would become obsolete in the year 1924 and would have to be sold or otherwise disposed of. The evidence also shows that the buildings and equipment

74

in question did become obsolete in 1924, and we are of opinion that the petitioner is entitled, in computing its net income for the years 1920 to 1924, inclusive, to deduct a reasonable allowance for such obsolescence.

The evidence also shows that the depreciated cost on December 31, 1919, of the equipment which was known to be obsolescent in 1920 and subsequently became obsolete, was $507,856.72. This obsolete machinery and equipment was sold in 1924, together with other property which had cost more than $1,500,000, for a total consideration of $450,000. No part of the purchase price was specifically allocated to the obsolete machinery and equipment, but we are satisfied from the evidence that neither its fair market, nor salvage value, was in excess of $50,000. The deductions for obsolescence should be computed on that basis.

The building on the petitioner's 25th Street real estate was also known to be obsolescent in 1920 and it became obsolete in 1924, and the real estate and buildings were sold in 1925. The difference between the depreciated cost and the sales price was $120,762.75, which shrinkage is attributable entirely to the buildings. The deductions for obsolescence will be computed on that basis.

The petitioner's tax liability for the years under consideration should be recomputed allowing deductions for obsolescence for each of the taxable years as above indicated.

*Judgment will be entered under Rule 50.*