PANTLIND HOTEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40886.   Promulgated July 20, 1931.

*F. E. Seidman, C. P. A.*, and *J. S. Seidman, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

OPINION.

LOVE: The petitioner concedes that it is a transferee of assets of the Building Company within the intendment of section 280 of the Revenue Act of 1926. The sole issue presented is whether the petitioner and the Building Company were affiliated from January 1 to June 29, 1926, and therefore were entitled to file a consolidated return for that period. The deficiency results from the respondent's denial of the claimed affiliated status.

It has been stipulated that during the taxable period petitioner owned 3,971 out of a total of 3,989 outstanding shares of the common stock of the Building Company, or approximately 99.55 per cent. During that period petitioner also owned 1,016 out of a total of 4,987 outstanding shares of the preferred stock of the Building Company, or approximately 22.82 per cent. Considering the two classes of stock together, petitioner owned 4,987 shares out of a total of 8,976 shares outstanding, or approximately 55.56 per cent. Certain of the directors of both companies owned stock in each and some of them also represented preferred stock by proxy. The petitioner's secretary was also an officer of the Building Company and the holder of seven shares of its preferred stock. However, it appears that petitioner is not relying upon the stockholdings of its directors or officers to establish its point and their holdings, which in any event are not sufficient to be decisive of the issue, will be disregarded in the discussion to follow.

As stated in the petitioner's brief the question is whether the outstanding preferred stock is to be considered in determining if the two companies involved meet the statutory requirements for affiliation. The statute is section 240 (d) of the Revenue Act of 1926, reading as follows:

For the purpose of this section two or more domestic corporations shall be deemed affiliated (1) if one corporation owns at least 95 per centum of the stock of the other or others, or (2) if at least 95 per centum of the stock of two or more corporations is owned by the same interests. As used in this subdivision the term "stock" does not include nonvoting stock which is limited and preferred as to dividends. * * *

The preferred stock of the Building Company had no voting rights except as provided by law. The applicable statute of Michigan is

the General Corporation Act of 1921, Public Act No. 84 of 1921, Part II, ch. 2, sec. 9050 (Compiled Laws Michigan, Cahill, annotated supplement, 1922, p. 942), which, so far as material, provides:

If at any time * * * any dividend due on the preferred stock shall remain unpaid for sixty days, then holders of such preferred stock shall have an equal right with the common stock, share and share alike, and notwithstanding any provision in the articles to the contrary, to participate in the election of directors and control of said corporation. * * *

At a meeting of directors of the Building Company on March 2, 1925, the customary semiannual dividend on the company's preferred stock was omitted and it was not resumed by June 30, 1926. The stock was redeemed on August 4, 1926. During the period involved in this proceeding, i. e., the period January 1 to June 29, 1926, preferred stock of the Building Company possessed and most of it exercised equal voting rights with the common stock. Despite its exercise of such voting power, petitioner contends that the preferred stock should not be taken into consideration in determining affiliation, the argument being that the statute involved does not contemplate consideration of stock having only a contingent and/or temporary voting power.

We think the provisions of section 240 (d) of the Revenue Act of 1926 are both mandatory and explicit. By its terms " stock does not include nonvoting stock which is limited and preferred as to dividends." The definitions of affiliation and of " stock " given in this section were designed, we believe, to establish a definite inflexible standard, to remove the uncertainties and obviate the variables constantly impeding efficient administration of prior statutes governing affiliation. In our opinion, this is the only construction compatible with the purpose and the intent of the Congress in enacting the statute in the terms it used and in the light of previous legislation on the subject. We think that for any period under this statute during which a claim for affiliation is not predicated upon ownership of at least 95 per cent of the actual outstanding voting stock, the claim must fail.

Petitioner suggests that under the statutes of most States, preferred stock, while ordinarily nonvoting, may, under certain conditions acquire voting privileges at least for some purposes, and that it was not intended that an affiliation should be dissolved upon such occurrences. Among the provisions mentioned are those which afford voting power to preferred stock upon such questions as consolidations or reorganizations, increase or decrease of authorized capital, change of corporate name, termination or extension of corporate life, etc. Without deciding the effect of such provision upon affiliation, we may point out that the voting power they confer upon preferred stock is in general strictly limited. The voting

power acquired by the preferred stock involved in this proceeding was quite different. By that power preferred stock acquired " an equal right with the common stock, * * * to participate in the election of directors and control of said corporation."

Petitioner cites *Commissioner of Internal Revenue* v. *Shillito Realty Co.*, 39 Fed. (2d) 830, and *Schlafly* v. *United States*, 4 Fed. (2d) 195, both involving the Revenue Act of 1918, as supporting in effect the principle it contends for herein.

In the *Shillito* case, *supra*, the preferred stock involved had, by its terms, full voting power with the common stock. Sixty-six per cent of all classes of stock was owned by the same interests and the remaining 34 per cent, all preferred stock, was owned by business associates of the president of both of the companies involved, and was voted by proxies given a committee of which he was chairman. The court, affirming the decision of the Board (8 B. T. A. 665), held that upon the circumstances no " adverse interest could be perceived in the ownership of outside preferred stock." We do not regard this, nor any other pronouncement in the *Shillito* decision, as holding that preferred stock with full voting power should not be considered in determining affiliation. Indeed, in that case the court did consider the preferred stock.

In the *Schlafly* case, *supra*, the Circuit Court affirmed an order of the District Court allowing the claim of the United States for income and profits taxes from the estate of the Temtor Corn and Fruit Products Company, bankrupt. The trustee of the bankrupt, resisting the claim of the United States, was contesting a determination of the Commissioner of Internal Revenue, holding the bankrupt affiliated with the Best-Clymer Company for the year 1920. It appeared that the Temtor Company owned all the common stock of the Best-Clymer Company but that the preferred stock was held by a number of persons who apparently had no other connection with the alleged affiliates. The trustee contended that by reason of such " outside " ownership of the preferred stock, and because that stock would acquire voting rights if cumulative dividends upon it remained unpaid for two years, it should be considered in determining whether or not " substantially all " of the stock of the Best-Clymer Company was owned by the bankrupt. The Circuit Court held that affiliation depended upon ownership or control of the voting stock and that it existed in that case although 3,000 persons held preferred stock of the Best-Clymer Company. The real point for our purpose is, however, that there was no default in preferred dividends during the taxable period involved, and, therefore, the preferred stock never acquired its contingent voting rights. See referee's opinion and District Court decision, 299 Fed. 326.

We have discussed the *Shillito* and *Schlafly* cases, *supra*, because petitioner appears to rely upon them, but in our opinion neither is in point and, considering the differences in the 1918 and 1926 Revenue Acts, neither could be determinative of the issue here presented. A case closer to our problem but equally as unauthoritative as those last mentioned, was decided by the Board in a prior appeal of this petitioner relating to the year 1921. *Pantlind Hotel Co. et al.*, 9 B. T. A. 878. The fact that the preferred stock herein involved had acquired voting rights by reason of dividend default prior to the taxable year was instrumental in our reaching a decision in that proceeding that the petitioner and the Building Company were affiliated. The parties there took positions opposite to those maintained herein, the petitioner contending that the effect of the voting preferred stock be considered, and the respondent opposing that view.

*Judgment will be entered for the respondent.*