*Further proceeding will be had under Rule 62(b).*

ESSEX COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8540.    Promulgated June 29, 1928.

*Evert L. Bono*, Esq., for the petitioner.
*Orris Bennett*, Esq., and *Hartford Allen*, Esq., for the respondent.

996

OPINION.

TRAMMELL: The original petition alleged that the respondent erred in determining the amount of depreciation deductible by the petitioner's affiliated corporation, the Lost Run Coal Co., and had failed to allow that company the full amount of depreciation sustained during 1919 and 1920. Inasmuch as the parties have stipulated the corrected consolidated net income, the corrected net income of each of the companies and the corrected deficiency as set out in the findings of fact, the only matter now in controversy is whether the respondent may assess the total consolidated deficiency against the petitioner or should he in determining the deficiency due from the petitioner apportion the correct consolidated tax between the petitioner and its affiliated company on the basis of their respective net incomes and assess against the petitioner only its proportion of the deficiency.

Section 240 of the Revenue Act of 1918 provides as follows:

(a) That corporations which are affiliated within the meaning of this section shall under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III and the taxes thereunder shall be computed and determined upon the basis of such return: * * *

* * * * * * *

In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. * * *

The petitioner contends that no agreement existed between it and the Lost Run Coal Co. as to how the consolidated income and profits taxes of the companies for 1920 should be assessed; that attached to the consolidated return was a schedule of the net income of each of the consolidated companies providing the respondent with the necessary information with which to determine and assess the tax against each company in proportion to the net income of each and that in the absence of an agreement between the companies the taxes are to be computed as a unit and assessed against each company on the basis of the net income properly assignable to each.

The respondent contends that in view of the facts in the case there existed an express or implied agreement between the corporations that assessment of all taxes are to be made against the petitioner. He also contends that irrespective of the existence of an agreement between the corporations the petitioner, under the circumstances in the case, is estopped from denying that there was an agreement between the companies that all taxes found due from the affiliated group were to be assessed against the petitioner.

The action of the petitioner in permitting the full amount of the original tax shown on the consolidated return to be assessed against it without protest, in permitting without protest the notices and demands for the payment of three quarterly installments thereof to be served on it and payment to be made in accordance therewith and in permitting the respondent's determination of the full amount of deficiency against it to go unchallenged until almost the date of the trial indicates that there was an agreement between the companies that the full amount of the tax liability of the affiliated group is to be assessed against the petitioner. Is the evidence, taken as a whole, sufficient to establish the fact that no agreement was in fact entered into between the two companies?

Fred Essex, an officer in both corporations during 1920 and who signed the four checks in payment of the installments of tax shown on the return as filed, testified that no agreement was entered into between the two companies with respect to the assessment of the tax.

Sumner Cottingham, who was active in the management in both companies in 1920, corroborated the testimony of Essex.

The agreement referred to in this statute is one between the corporations included in the consolidated return. It is not required to be in writing or to be in any particular form or language. Such a contract may be implied as well as express. Such an agreement does not relate to the payment of the tax but only to its assessment. Whether such an agreement was made may be shown by circumstantial evidence and the conduct of the parties as well as the testimony of witnesses. Here the officers of the two corporations were the same individuals. The individual who represented and acted for one company as president, acted in the same capacity for the other. An agreement between the said officers in one capacity and the same individuals in another capacity might have been a mere mental process evidenced only by the outward acts and conduct of the parties. It would have been a useless process for the president of one company to agree with himself as president of another company, and for the other officers in their respective capacities to agree with themselves by any express language. An agreement which is inferred from the acts and conduct of parties is just as effective as any other kind of an agreement.

We think that this case is governed by the principles set forth in the case of *In re Temtor Corn & Fruit Products Co.*, 299 Fed. 326, wherein the court stated:

It is finally contended on behalf of the trustee in bankruptcy that, even though the tax here in question was properly computed on the basis of the consolidated return, the government in making the assessment should have apportioned the tax between the two companies, as provided in section 240 of the Revenue Act of 1918. The evidence shows that the tax was computed as a unit, and was not apportioned, but was all assessed against the Temtor Company. Under the statute it was proper for the two corporations concerned to agree as between themselves as to the proportion of the entire tax to be assessed against each. As the entire tax appears to have been assessed against the Temtor Company, and as that company, without objection or request for an apportionment, paid three quarterly installments of the tax, it must be inferred that both companies agreed to the assessment as made. As already stated, the companies had practically the same officers and directors, and the course followed by them was the legal equivalent of an agreement and request that the entire tax be assessed against the Temtor Company. In the present posture of the case, I do not think it is open to either company to object to the course taken by the government in assessing the tax.

Considering all the evidence in the case, it is our opinion that an agreement was entered into between the two corporations to the effect that the total tax might be assessed against the petitioner. It is immaterial how the parties actually paid the tax or how they agreed the tax should be paid. We are concerned here only with the question as to how it should be assessed. In a consolidated group the tax may

well be assessed against the parent or principal company and the subsidiaries contribute to the parent company their proportionate part of the tax. The fact that they do contribute their proportionate part of the tax does not indicate that it was not to be assessed against one of the companies.

We do not think that the statement contained in Form 1122 filed for the previous year with respect to the assessment of the tax has any relation or evidentiary value for the purpose of showing that the same agreement was effective for the taxable year. On the other hand, if it has any weight at all, it supports the conclusion that we have reached that there was an agreement or understanding that the entire tax should be assessed against the petitioner for the taxable year. For the previous year when there was no such agreement or understanding to the effect that the entire tax should be assessed against the petitioner, the Commissioner was notified in that form to assess the tax as therein stated, that is, against both companies. No such form, statement or information was conveyed to the Commissioner with respect to the taxable year. On the other hand, the acts of the parties and the other circumstantial evidence convince us that there was an understanding or agreement between the two corporations that the entire tax should be assessed against the petitioner for the taxable year.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

GREEN dissents.