UNION PACIFIC RAILROAD CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24449. Promulgated October 8, 1929.

*Henry W. Clark, Esq.,* and *Harry J. Gerrity, Esq.,* for the petitioner.

*Maxwell E. McDowell, Esq.,* and *B. M. Coon, Esq.,* for the respondent.

794

OPINION.

STERNHAGEN: The foregoing findings are as requested by both parties, except finding 4, which is as requested by petitioner and contrary to the request of respondent.

The respondent, in determining the deficiency for 1917, has treated petitioner and the Short Line and the Navigation Company as affiliated within his interpretation of the meaning of section 1331, Revenue Act of 1921. The petitioner contends that respondent's construction of the statute is incorrect, and that, correctly interpreted, the statute requires that these corporations shall not be construed to be affiliated.

The Revenue Act of 1917, under which income and profits taxes for 1917 were imposed, contained no express provision in respect of consolidated returns of affiliated corporations. Such requirements were, as we shall see, found only in Treasury regulations and rulings. Congress, in the Revenue Act of 1921, undertook to ratify such requirement by section 1331. *Ohio & Big Sandy Coal Co.*, 15 B. T. A. 273.

SEC. 1331. (a) That Title II of the Revenue Act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations and domestic partnerships that were affiliated during the calendar year 1917.

(b) For the purpose of this section a corporation or partnership was affiliated with one or more corporations or partnerships (1) when such corporation or partnership owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others, or (2) when substantially all the stock of two or more corporations or the business of two or more partnerships was owned by the same interests: *Provided*, That such corporations or partnerships were engaged in the same or a closely related business, or one corporation or partnership bought from or sold to another corporation or partnership products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation or partnership in any way so arranged its financial relationships with another corporation or partnership as to assign to it a dispropor-

tionate share of net income or invested capital. *For the purposes of this section, public service corporations which (1) were operated independently, (2) were not physically connected or merged and (3) did not receive special permission to make a consolidated return, shall not be construed to have been affiliated* [italics ours]; but a railroad or other public utility which was owned by an industrial corporation and was operated as a plant facility or as an integral part of a group organization of affiliated corporations which were required to file a consolidated return, shall be construed to have been affiliated.

(c) The provisions of this section are declaratory of the provisions of Title II of the Revenue Act of 1917.

The present controversy turns upon the scope of the italicized portion—more particularly, whether it applies to the facts shown by the evidence. Manifestly, the general language of the statute, read independently, does not connote its absolute boundaries so as to permit a clear classification of those corporations which are comprehended and those excluded. Hence the parties are opposed as to the meaning of " operated independently " and of " physically connected or merged." The evidence is undisputed. We may, therefore, consider the historical development which culminated in section 1331 for whatever light it may throw on its purpose and intendment.

After the enactment of the War Revenue Act of October 3, 1917, which failed entirely to mention affiliated corporations, the Treasury Department issued Regulations 41, the date of which does not appear. This was probably done sometime between November 30, 1917 (the date of Regulations 40, Treasury Decision 2608, 19 T. D. 376), and March 6, 1918 (the date of Treasury Decision 2662, 20 T. D. 41, in which Regulations 41 is referred to as if already published). The fact that Regulations 41 appears as Treasury Decision 2694 (20 T. D. 294) bearing no date does not therefore indicate later publication. In these Regulations 41, prior to March 6, 1918, the following articles appear, in which for the first time there is recognition of affiliated corporations and consolidated returns:

ART. 77. *When affiliated corporations must furnish information as to intercorporate relations.*—For the purpose of the excess profits tax every corporation will describe in its return all its intercorporate relationships with other corporations with which it is affiliated, and will furnish such information in relation thereto as will enable the Commissioner of Internal Revenue to compute the amount of the tax properly due from each corporation on the basis of an equitable and lawful accounting.

For the purpose of this regulation two or more corporations will be deemed to be affiliated (1) when one such corporation owns directly or controls through closely affiliated interests or by a nominee or nominees, all or substantially all of the stock of the other or others, or when substantially all of the stock of two or more corporations is owned by the same individual or partnership, and both or all of such corporations are engaged in the same or a closely related business; or (2) when one such corporation (a) buys from or sells to another products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or (b) in any way so arranges its financial

relationships with another corporation as to assign to it a disproportionate share of net income or invested capital.

ART. 78. *When affiliated corporations may be required to make consolidated return.*—Whenever necessary to more equitably determine the invested capital or taxable income, the Commissioner of Internal Revenue may require corporations classed as affiliated under article 77 to furnish a consolidated return of net income and invested capital. Where such consolidated return is required it may be made by any one or more of such corporations or by all of them acting jointly; but if such affiliated corporations, when requested to file such consolidated return, neglect or refuse to do so, the Commissioner of Internal Revenue may cause an examination of the books of all such corporations to be made and a consolidated statement to be made from such examination. In cases where consolidated returns are accepted, the total tax will be computed in the first instance as a unit upon the basis of the consolidated return and will be assessed upon the respective affiliated corporations in such proportions as may be agreed among them. If no such agreement is made the tax will be assessed upon each such corporation in accordance with the net income and invested capital properly assignable to it.

These regulations cover corporations of all kinds without distinction as to the nature of their business, and hence are applicable to public service corporations. They would appear to comprehend these three corporations as being affiliated and would have apparently required a consolidated return prior to April 1, 1918, which was the date to which the time for filing of all corporation returns was extended (T. D. 2650 of February 9, 1918, 20 T. D. 27).

On March 6, 1918, which was prior to such filing date, the Treasury Department issued Treasury Decision 2662, the pertinent provisions of which are as follows:

Pursuant to article 78 of regulations 41 relative to war excess-profits tax, affiliated corporations as limited and defined in paragraphs C and D below are hereby directed to make consolidated returns for the purpose of excess-profits tax. Affiliated corporations other than those falling within the provisions of paragraphs C and D may make a consolidated return only after having secured permission in writing from the Commissioner of Internal Revenue. Affiliated corporations are defined in article 77 of the regulations as follows: [Omitted to avoid unnecessary repetition.]

A. Two or more corporations are not "affiliated" merely because all or substantially all of the stock therein is owned by the same corporation, individual, or partnership; they must also be engaged in the same or a closely related business.

B. For purposes of regulation by public service commissions or similar authorities, the identity of public service corporations, when not grouped into one operating unit, must be maintained even though they are owned by the same corporation or taxpayer; and under such regulation the accounts of such public service corporations are deemed to reflect the true invested capital and income of each operating unit. Accordingly railroads, gas, electric, water, and other public service corporations when operated independently and not physically connected or merged—particularly when situated in different jurisdictions and subject to regulation by public service commissions—will not be required or permitted without special permission obtained in advance to make a consolidated return. When, however, a railroad or other public utility is

owned by an industrial corporation and is operated as a plant facility or as an integral part of a group organization of affiliated corporations, and such affiliated corporations are required to file a consolidated return, the return of such railroad or other public utility shall be included therein.

C. The words "all or substantially all of the stock" as used in the above definition (art. 77) will until further notice be interpreted as meaning an ownership of 95 per cent or more of such stock by the same taxpayer during the taxable year.

D. In case of affiliated corporations among which there exist contracts or trade or financial practices which arbitrarily or artificially influence or determine the amount of the invested capital or net income of one or more of the corporations so affiliated and where 95 per cent or more of the stock of the subsidiary affiliated corporations is owned by a parent or controlling corporation or by an individual or partnership, a consolidated return will be required.

E. A consolidated return shall be filed by the parent or principal corporation in the office of the collector of the district in which it has its principal office. * * *

  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

DANIEL C. ROPER
*Commissioner of Internal Revenue.*

Approved March 6, 1918:
 W. G. McADOO,
  *Secretary of the Treasury.*

This presumably was the state of affairs when the three corporations filed separate returns for 1917. We omit, for the time, any comment or discussion of T. D. 2662, except to call attention to paragraph B, which treats public service corporations specially and therefore requires further consideration.

Thus matters stood controlled as to 1917 by Regulations 41 and T. D. 2662 until the Congress in August, 1921, began shaping the new revenue legislation which became the Revenue Act of 1921. The Revenue Act of 1918 did not affect affiliations of 1917 and the affiliations for later years were, by section 240, classified by a wholly different description. It is therefore of no significance in this proceeding. In the first bill of August 15, 1921 (H. R. 8245, 67th Cong., 1st sess.) was proposed section 1007, as follows:

SEC. 1007. (a) Title II of the Revenue Act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations and domestic partnerships that were affiliated during the calendar year 1917.

(b) For the purpose of this section a corporation or partnership is affiliated with one or more corporations or partnerships (1) when such corporation or partnership owns directly or controls through closely affiliated interests or by a nominee or nominees all or substantially all of the stock of the other or others, or (2) when substantially all of the stock of two or more corporations or the business of two or more partnerships is owned by the same interests: *Provided*, That such corporations or partnerships are engaged in the same or a closely related business, or one corporation or partnership buys from or sells to another corporation or partnership products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation or partnership in any way so arranges its financial rela-

tionships with another corporation or partnership as to assign to it a disproportionate share of net income or invested capital.

(c) The provisions of this section are declaratory of the provisions of Title II of the Revenue Act of 1917.

This, in paragraph (b), was a substantial and almost identical restatement, as to corporations, of the language of Regulations 41, article 77. As to this section, the House Committee on Ways and Means said in its report to the House:

Section 1007: For the year 1917 affiliated corporations were permitted or required to make consolidated returns for the purpose of the excess-profits tax. Owing to the equivocal language employed in the act of October 3, 1917, some doubt exists concerning the legality of this procedure. In order to set all doubts at rest, section 1007 validates the practice of the Treasury Department under the revenue act of 1917. Such validation is particularly necessary as the taxation of the largest corporations is determined on the basis of the consolidated return.

In this form, the provision went to the Senate, and in explanation of it to the Committee on Finance, Dr. T. S. Adams, Tax Advisor, Treasury Department, said:

Dr. Adams. Section 1008 [1007] of the proposed bill, H. R. 8245, provides:

\*　　　\*　　　\*　　,　　\*　　　\*　　　\*　　　\*

Before I go any further, may I say a word of explanation in regard to this? You will remember that under the revenue act of 1917, without an explicit statement in the law, the consolidated return was accepted, and probably 75 per cent of the corporation taxes collected that year were collected on the basis of consolidated returns. I have some reason to believe that perhaps that was without warrant of law; it may be invalid. It is here proposed to validate that procedure in order that those taxes may not be endangered; that is, the collection made at that time.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Senator Smoot. You are putting the regulations into law, that is what this is?

Dr. Adams. Yes.

(Hearings before the Finance Committee, United States Senate, 67th Cong., 1st Session, on H. R. 8245, Thursday, Sept. 1, 1921, p. 133.)

The Senate Finance Committee said in its report to the Senate:

Section 1331 provides for the validation of the consolidated return regulations under the revenue act of 1917. For the year 1917 affiliated corporations were permitted or required to make consolidated returns for the purposes of the excess-profits tax. Owing to the equivocal language in the revenue act of 1917 some doubt exists concerning the legality of this procedure. In order to set all doubts at rest, it is deemed advisable to validate the practice of the Treasury Department under the revenue act of 1917. Such validation is particularly necessary, as the taxation of the largest corporations is determined upon the basis of the consolidated return.

Thereafter, in the Senate print of November 4, 1921, appears an addition to subdivision (b) of section 1331, as follows:

\* \* \* For the purposes of this section, public service corporations shall be construed to be affiliated only if and to the extent provided in the regula-

tions heretofore promulgated with reference to Title II of the Revenue Act of 1917.

This sentence was stricken in conference, and in substitution was inserted the sentence which was finally enacted into law as quoted *supra*, and the Conference Committee in its report said:

Amendments Nos. 817 and 825: Section 1007 of the House bill provided for the validation of the regulations of the Treasury Department made under the revenue act of 1917 in relation to the consolidated returns of corporations. Senate amendment No. 817 strikes out this provision, but amendment No. 825 reinserts it at a later portion of the bill, with clarifying changes. The House recedes on amendment No. 817 and recedes from its disagreement on amendment No. 825 with clarifying changes.

The law was passed November 23, 1921.

Subsequently, under date of August 24, 1922, the Treasury Department issued Treasury Decision 3389 (24 T. D. 1126) whereby articles 77 and 78 of Regulations 41 were amended and T. D. 2662 was superseded. The last paragraph of this new Treasury Decision alone affects railroads and is as follows:

Railroads, gas, electric, water, and other public service corporations when (a) operated independently and (b) not physically connected or merged—particularly when situated in different jurisdictions and subject to regulation by public service commissions—will not be required or permitted, without special permission obtained in advance, to make a consolidated return. When, however, a railroad or other public utility is owned by an industrial corporation and is operated as a plant facility or as an integral part of a group organization of affiliated corporations, and such affiliated corporations are required to file a consolidated return, the return of such railroad or other public utility shall be included therein.

This later Treasury Decision throws no light upon the intendment of the previously enacted law. It simply repeats a portion of the earlier T. D. 2662, which in its entirety was explicitly intended to be validated. In view of the several unmistakable indications in the legislative developments of 1921 that the legislative purpose was to carry into the Act a retroactive approval of its administrative applications up to that time, the Act must be read in the light of *all* the executive rulings then extant. No purported amendment by the Treasury Department of such rulings could delete any part of the legislative history or bring about a construction narrower than its true historical setting warrants. The use frequently made of subsequent executive construction of an act to aid in resolving its ambiguities has no place when the Congressional intent is more definitely ascertainable from the historical facts known to have been considered. A subsequent executive ruling may not deflect the construction of the statute into another course, and to the extent that it attempts to do so can have no effect. The validation by Congress of regulations already existing can not be construed as an authoriza-

tion to change them. We must read section 1331 as a ratification of all of T. D. 2662, and as so read, apply it to the facts in evidence; and if this is different from the application to the facts of the later Treasury Decision 3389, the latter must give way.

Looking again at the crucial part of section 1331, it is as follows:

For the purposes of this section, public service corporations which (1) were operated independently, (2) were not physically connected or merged and (3) did not receive special permission to make a consolidated return, shall not be construed to be affiliated.

This is because, as explained in T. D. 2662, such corporations were publicly regulated, their identities were clearly maintained, and their accounts were supervised so as to assure their true reflection of invested capital and income. Thus the apparent possibility of tax reduction—feared as to corporations whose affairs were privately controlled and whose accounts were not uniformly prescribed and who might thus artificially adjust their affairs to their tax advantage, was not present as to public service corporations, and equal importance of consolidated returns did not exist. The operation of the properties or their physical relationship was not of itself of consequence, but only as a rough index of the probability of artificial income. Although, therefore, physical connection and independence of operation are express criteria under the statute and in unequivocal cases must determine the affiliation, in cases of doubt they must be subordinated to effectuate the taxing purpose of the statute and to avoid a levy in excess of that clearly imposed by the statute. *Gould* v. *Gould*, 245 U. S. 151.

These are the guides which have directed the ultimate finding of fact requested by petitioner that the three corporations were in 1917 independently operated and not physically connected and merged, and the rejection of the contrary ultimate finding requested by respondent. The evidence contains many facts which would prevent an absolute finding either way. There is much as to the business of these corporations that is common and much that is separate. That the railroads comprise a so-called " system " is of no controlling importance in applying this statute, nor is the community purchase of materials or enjoyment of traffic or other facilities, since these are fairly apportioned. The maintenance of common executive management and the interadjustment of certain policies gives color to the Government's view, but they do not, in our opinion, set at naught the independence of operation which otherwise exists or bring the affairs of these companies within the class of situations which section 1331 was designed to deal with.

The respondent was in error in his determination that petitioner was affiliated with the Short Line or the Navigation Company. The

proceeding will be restored to the general calendar for such further hearing on the remaining issues as is necessary in view of this decision.