WOODSIDE COTTON MILLS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11625. Promulgated August 22, 1928.

*James Craig Peacock, Esq.*, and *C. F. Haynsworth, Esq.*, for the petitioner.

*James A. O'Callaghan, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The several issues presented by the petitioner have already been set forth and will be considered in the order in which they have been presented.

The petitioner claims that for the years 1918 and 1919 the exhaustion of its machinery was so ˚seriously increased by inefficient labor and other conditions growing out of the war that instead of the usual rate of 5 per cent, which both parties agree is applicable under usual conditions, its deduction for depreciation should be at the rate of 10 per cent, or double the usual rate. The Commissioner in determining the deficiency recognized the effect of the unusual conditions in 1918, and increased the allowance from 5 per cent to 6 per cent, and for 1919 he has disallowed any increase.

In our opinion the evidence does not sustain an allowance greater than 6 per cent for each of the two years. While it is clear that operating conditions in 1918 and 1919 were such as to increase or accelerate the exhaustion of the machinery, the evidence falls short of establishing a 10 per cent rate. The only evidence of the measure of exhaustion in these years consists of the categorical opinions of the vice president and treasurer of the petitioner and of the superintendent of one of the plants. These opinions, however, were not substantiated, and the qualifications of the witnesses to express an opinion

on this subject were not satisfactorily demonstrated. They are not conclusive. *The Conqueror*, 166 U. S. 110; *W. S. Bogle & Co.* v. *Commissioner of Internal Revenue*, 26 Fed. (2d) 771. They had been associated with cotton mills for many years, but that alone is not sufficient to make their judgment authoritative or convincing. Although the precise rate of such exhaustion may not be susceptible of scientific demonstration, it is, on the other hand, not a matter of arbitrarily fixing a convenient rate. From the facts before us, as distinguished from the witnesses' opinions, it could be as readily concluded that the machinery would be exhausted in 20 years as that it would be exhausted in 5 years. And under these circumstances there is no reason to accept blindly the judgment of these witnesses that it will be exhausted in 10 years, in lieu of respondent's determination. The respondent, presumably after an examination, has determined for 1918 that an additional 1 per cent is adequate to allow for the unfavorable conditions, and the evidence does not lead us to a different conclusion.

As to 1919, the evidence indicates that the conditions were similar to those existing in 1918 and, therefore, the allowance should also be similar and an additional 1 per cent should be applied.

The petitioner claims that amounts of $1,216.72 and $132,353.19 spent for street paving are deductible in the respective years in question under section 234 (a) (1) of the Revenue Act of 1918 as " ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." To support this contention evidence was introduced tending to show that the petitioner believed it necessary in order to attract labor at a time when laborers were difficult to procure, to pave the streets of its mill village. It was testified that this labor necessity was the direct occasion for the paving expenditure and that under ordinary circumstances such an expenditure would not have been made. It was testified further that although the streets were owned by the corporation and had not been formally dedicated to the public, they had in fact been thrown open to the public and were in public use. From this it is argued that the expenditures were directly attributable to the business of the years in question, were therefore properly to be charged off entirely in those years, and were not capital expenditures.

It is also argued that because the paving was upon streets devoted to the public its cost may be regarded as a donation to the public.

We are, however, of the opinion that these expenditures were not within the statutory deduction. From the fact that labor difficulties were the direct occasion for these improvements by the petitioner, it does not follow that the benefits thereof to the petitioner were substantially limited to the year or that the profits of the year should alone be burdened with their cost. This is true even if it be assumed

that the improvements were public and not solely for the private benefit of the plant. Even as to municipal improvements covered by special assessments, Congress has clearly provided in section 234 (a) (3) that such assessments are not to be deducted. See *Caldwell Milling Co.*, 3 B. T. A. 1232. And in section 235 and section 215 (b) it is provided that no deduction may be allowed for amounts paid for permanent improvements. So far as the evidence shows, we may infer that irrespective of the particular occasion which necessitated the improvement, its result was to benefit the petitioner and its property for a period substantially longer than the year when the work was done. See *E. W. Edwards & Sons*, 3 B. T. A. 889. There is nothing to justify writing this expenditure off in its entirety in this single year when its effect is materially to enhance the value and utility of the entire plant. It is fanciful, in view of the evidence, to call the expenditure a " donation," or to allow its deduction as if it were a contribution to the community in order to increase current profits.

In computing the invested capital for 1918, the Commissioner arrived at the amount of earnings available for dividends paid during the year after deducting a so-called " tentative tax " of $631,339.50. The method was the same as that condemned in *L. S. Ayers & Co.*, 1 B. T. A. 1135; *All America Cables, Inc.*, 10 B. T. A. 213, and the deficiencies should in this respect be recomputed in accordance with those decisions.

While 1917 is not one of the years in issue, the petitioner claims that the deficiencies for 1918 and 1919 are incorrectly increased by reason of the fact that they reflect an excessive tax for 1917, which is said to arise from the omission from invested capital of an alleged good will of $354,372.79. It is not disputed that the Board may properly examine into the invested capital for 1917 to the extent necessary to fix the correct liability for 1918 and 1919. *Reading Hardware Co.*, 7 B. T. A. 337. There is, however, an insufficient basis in the evidence for a finding that the Commissioner has understated the invested capital of 1917. The only proof is that the Commissioner has been inconsistent in omitting the item of good will for 1917 and including it for 1918 and 1919. But it does not appear from the evidence that the inconsistency itself is contrary to the statute, nor does it appear that if it is unwarranted it should be straightened out by an allowance in 1917 rather than a disallowance for 1918 and 1919. There are no facts in the record to indicate even slightly that intangible property called good will had been so paid in to the corporation as to bring it within section 207 of the 1917 Act or section 326 of the 1918 Act; nor is there anything from which a valuation could be made, even assuming that the contribution of good will could be seen

in the evidence. The petitioner treats this item as if it were a patent mathematical error, and if this were the situation we might be justified in requiring its correction without exhaustive evidence of the substantive facts. *Bruce & Human Drug Co.*, 1 B. T. A. 342; *Quadriga Manufacturing Co.*, 2 B. T. A. 1119. But since we can not ascertain whether there has been an error or what the true source of the alleged inconsistency is, we must leave the situation as we find it in the record. *John W. Anderson*, 12 B. T. A. 1111.

The petitioner seeks to avoid any liability for deficiency for 1918 by invoking the following provision of section 240 (a), Revenue Act of 1918:

In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each.

The petitioner sought to prove by oral testimony that there was an absence of an agreement for assessment upon a basis other than that " of the net income properly assignable to each." From the alleged absence of an agreement the argument is made that the only taxable net income of the affiliated group was that of the three subsidiary corporations, and that since no net income is assignable to the petitioner, no assessment of any part of a consolidated tax may be made against it. See *Cincinnati Mining Co.*, 8 B. T. A. 79. Petitioner further attempts to show that as to the three subsidiaries the statutory period of limitation upon assessment has expired; and for this purpose there is an attempted repudiation of several written consents filed with the Commissioner under section 250, Revenue Act of 1921, and section 278, Revenue Act of 1924. These consents are now said to have been null because the signature thereon and the corporate seal were unauthorized.

The operation of the statute of limitations and the effectiveness of the written consents do not require consideration, because, in our opinion, the evidence establishes an agreement for the payment of the tax by the petitioner. At the time that the consolidated return was filed, the petitioner was all that remained of the legal structure by which the business of these various plants had been operated. This business had for some time been substantially operated in the interest of a single group of individuals. A plan for consolidation is in evidence, dated May 8, 1911, which contains the opening statement to stockholders that " for the purpose of consolidating the Woodside Cotton Mills, the Fountain Inn Manufacturing Co., and the Simpsonville Cotton Mills, it is proposed to organize a company chartered under the law of the State of South Carolina to be known as Woodside Cotton Mills Company, with John T. Woodside as presi-

dent, and with a capital stock * * *." The acquisition of the stock of the three corporations had proceeded over a period of years and was completed in 1917.

In the taxable year in question all of the stock was owned by the petitioner, and it was in complete control of the situation. There was no necessity for any writing to evidence or support a demand upon any of the three corporations, except where outsiders were involved. Under these circumstances, actions speak louder than words. When in September, 1919, a consolidated return was filed as required by the statute, the interests, which in 1918 were in unity despite the separate legal entities, had become completely identical through the abolition of the three subsidiary corporations. The petitioner was at that time the owner of everything which had theretofore been the property of its affiliated corporations. Presumably (and there is nothing in the evidence to the contrary) this acquisition of property carried a correlative agreement to discharge the liabilities incident thereto. And we see nothing in section 240 (a), Revenue Act of 1918, which requires the agreement therein referred to to be a voluntary written agreement or excludes an agreement which the law necessarily implies from conduct. See *Essex Coal Co.*, 12 B. T. A. 994.

But it is not necessary to resort to such a construction of the statute in this case, for it was testified that the petitioner voluntarily paid the entire tax, accounted for it entirely as its own liability, made no charge of any part thereof against anyone else, and never expected to be relieved of any part. It also transferred to its own books all the liabilities of the subsidiaries. This action was taken with the full knowledge and acquiescence of the officers of the petitioner and has never been questioned. In view of this evidence, we can not permit the mere statement of one of the officers of the company to the effect that no agreement had been made to prevail. A form of written agreement signed in September, 1919, would have been a mockery and would have added nothing to the clear liability otherwise assumed. Having found as a fact that the petitioner agreed to bear the entire tax, we sustain the respondent in determining that petitioner should bear the assessment.

The summary of the decisions in respect of the foregoing issues is that the petitioner is entitled to a deduction for depreciation of machinery for 1919 of 1 per cent in addition to that already allowed by the Commissioner, and that for 1918 its invested capital should be computed pursuant to *L. S. Ayers & Co.*, *supra*. In all other respects the respondent's determination is sustained. It follows therefore that the necessary adjustments should be made to carry through these two modifications.

*Judgment will be entered under Rule 50.*