Advance Machinery Exchange, Inc. v. Commissioner.
Advance Mach. Exch. v. Commissioner
Docket No. 15920.
United States Tax Court
1949 Tax Ct. Memo LEXIS 285; 8 T.C.M. (CCH) 84; T.C.M. (RIA) 49026; January 25, 1949
Frank T. Kleiger, Esq., and James A. Ronayne, Esq., 120 Broadway, New York, N. Y., for the petitioner. T. R. Wickersham, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves deficiencies in declared value excess profits tax and excess profits tax in the amounts of $1,346.24 and $40,539.31, respectively, for the year 1942. The issues to be determined are as follows: (1) Did the respondent err in attributing to the petitioner the net income of Awon Holding Corporation, Blachman Machinery Company, Inc., and Joseph Blachman, individually, (hereinafter sometimes referred to as Awon, Blachman, Inc., and J. Blachman, respectively) in 1942? (2) Did the respondent correctly determine petitioner's *286 invested capital for the purpose of its excess profits tax credit? (3) Did respondent correctly disallow purchases in the amount of $2,170? (4) Did respondent err in increasing petitioner's closing inventory in 1942 by $2,833.75 for items allegedly purchased in December of that year? A stipulation of facts was filed. We adopt same by reference and find the facts therein set forth. Such parts thereof as it is considered necessary to set forth are included with other facts found from evidence adduced in our Findings of Fact Petitioner is a corporation organized under the laws of the State of New York, on February 7, 1928. All Federal tax returns of petitioner for the year 1942 were filed with the collector of internal revenue for the second district of New York. Blachman, Inc., is a corporation organized under the laws of the State of New York, on December 29, 1930. Awon is a corporation organized under the laws of the State of New York on May 26, 1941. The officers and directors of these corporations for the year 1942 were as follows: Name
Petitioner
Blackman, Inc.
Awon
J. Blachman
President-Director
Treasurer
President-Director
Seymour Blachman
Vice President-
President-Director
Secretary-Treasurer-
Director
Director
Rebecca Pedowitz
Secretary-Director
Vice-President-
Director
Anna Goldstein
Secretary-Director
George Levine
Director
Benjamin Cohen
Director
*287 The stockholders of petitioner and Awon for the year 1942, their relationship to J. Blachman, and the number of shares of stock owned by each are as follows: Number of Shares
Relationship to
of Stock
Name of Stockholder
J. Blachman
Petitioner
Awon
J. Blachman
* 31
25
Sarah Blachman
Wife
88
7
Seymour Blachman
Son
88
7
Abraham Blachman
Son
88
7
Rebecca B. Pedowitz
Daughter
88
7
Rebecca Pedowitz (in trust for Milton and Jack
Pedowitz)
Daughter
66
Rebecca B. Pedowitz (in trust for Sheldon, Albert,
Jack and Milton Pedowitz)
Daughter
2
Anna B. Levine
Daughter
88
7
Anna B. Levine (in trust for Marvin Levine)
Daughter
2
Yetta B. Cohen
Daughter
88
7
Yetta B. Cohen (in trust for Donald Elias Cohen)
Daughter
2
Petitioner
15
Ethel Blachman (in trust for Gerald Blachman)
Daughter-in-law
2
Of the outstanding stock of petitioner in 1942, 47 shares registered in the name of Seymour Blachman, 66 shares in the name of Rebecca Pedowitz and 57 shares in the name of Anna Levine, were endorsed in blank. All stockholders were members *288 of the immediate family of J. Blachman and received their shares of stock as gifts from him. Blachman, Inc., began business in 1930 with an invested capital of $3,600, $100 of which was contributed by Isidore Pedowitz and $3,500 by Seymour Blachman. Thirty-five shares of stock were issued to Seymour Blachman and one share to Isidore Pedowitz. It was incorporated to give Seymour Blachman an opportunity in business. It continued in business until 1933 or 1934 and then became dormant. The corporation was not dissolved and it was again doing business in 1942. As of January 1, 1942, $2,500 of its capital stock was outstanding and in the name of Seymour Blachman. J. Blachman has been president of petitioner and of Awon and treasurer of Blachman, Inc., continuously since the formation of those corporations. Seymour Blachman has been president of Blachman, Inc., and secretary and treasurer of Awon since their incorporation. He has been vice-president of petitioner since about 1936. J. Blachman and Seymour Blachman did most of the buying and part of the selling of petitioner, Blachman, Inc., Awon and J. Blachman, individually. In 1942, the offices of petitioner, Blachman, Inc., Awon *289 and J. Blachman, individually, were at 193 Centre Street, New York, N. Y., and served by a common telephone switchboard. There was a telephone line from the switchboard to a store at 182 Centre Street. Petitioner was a member of the Machinery Dealers National Association. Blachman, Inc., Awon and J. Blachman, individually, were not members. In 1942 the lettering on the office door at 193 Centre Street was that of petitioner as was the principal lettering on a large window facing Centre Street. On the lower left-hand corner, in rather small letters, were [was] the lettering: "J. Blachman, Awon Holding Corporation, Blachman Machinery Corporation." In 1942, J. Blachman formed a partnership with Seymour Blachman, known as the Jay-Esa Machinery Company, to engage in the same machinery business as petitioner. J. Blachman was listed in the Manhattan classified telephone directory for the year 1930 as being in the trucking business. He was not listed as being in the machinery business. In 1942, Awon was not listed in the Manhattan telephone book or classified directory as a dealer in machinery. Blachman, Inc., was not licensed with the Department of Licenses of the City of New *290 York as a dealer in second-hand machinery after the year 1934. In 1942 there were only two meetings of petitioner's Board of Directors. Awon's Board of Directors had one meeting and the Board of Directors of Blachman, Inc., had none. The social security returns of Blachman, Inc., for the first and second quarters of 1942 list Seymour Blachman as the only employee of that company. The return for the third quarter indicates that no employee was listed and a statement is made thereon. "This corporation is inactive at the present time. However, it is not being dissolved at this time." No return was filed for the fourth quarter of 1942. The sales invoice book of Blachman, Inc., shows that that company had 47 separate sales transactions after July 1, 1942. Some of the sales invoices contained more than one item. The delivery and bookkeeping work on these sales was done by employees of petitioner. J. Blachman, individually, was engaged in the trucking business as early as 1914. In 1923 or 1924, he also began a second-hand machinery business. In 1926, he formed a partnership with one Sarah Baronowitz, and engaged in the machinery business under the name of "Advance Machinery Exchange. *291 " In the same year he bought out Sarah Baronowitz's interest and operated as a sole proprietorship until 1928 when the business was incorporated under the name of "Advance Machinery Exchange, Inc.," the corporation which is the petitioner herein. J. Blachman resumed his individual transactions in machinery in 1939. On January 7, 1939, an opening entry was made in the general journal of J. Blachman, as follows: "Jan. 7, 1939 Joseph Blachman has this begun business as a dealer in New & Used Machinery at wholesale and retail at 193 Centre St. using the Office of the Advance Mach. Exch. of which he is pres. as his office with the following Investment. "Cash
$3,347.92
"Purchases
7,450.00
"Dep. on Plant Purch.
"Loans Payable
$3,636.25
"J. Blach; Cap
9,555.53" Petitioner has been operating continuously since its incorporation in 1928. The organization of Awon was for the purpose of handling so-called "deals" * and thereby relieving petitioner, J. Blachman and Blachman, Inc., of any responsibility connected with such transactions. During the year 1942 Awon transacted substantial amounts of business other than business classified as "deals." During 1942 *292 petitioner, J. Blachman, and Blachman, Inc., had business classified as "deals." Petitioner reported on its 1942 income tax return profit from "deals" in the amount of $901.08. In 1942, there were transactions where customers purchased machinery and paid petitioner although on the books and records the sales appeared to have been those of either Blachman, Inc., or Awon. The sales, cost of goods sold, deductions and net income as reported on the Federal income tax returns of the four business entities here involved, are as follows: Advance
Blachman
Awon
Awon
Mach. Ex-
Machinery
Joseph
Holding
Holding
change, Inc.
Co., Inc.
Blachman
Corp.
Corp.
1942
1942
1942
6/30/42
6/30/43
Gross sales
$364,576.14
$15,981.75
$161,821.09
$51,019.35
$53,097.79
Cost of goods sold: Inventory at beginning
24,505.50
15,050.50
4,220.00
Purchases
271,140.31
9,315.85
117,875.22
32,440.74
32,821.42
Totals
$295,645.81
$ 9,315.85
$132,925.72
$32,440.74
$37,041.42
Inventory at end
22,531.50
11,615.00
4,220.00
3,645.00
Cost of goods sold
$273,114.31
$ 9,315.85
$121,310.72
$28,220.74
$33,396.42
Gross profit on sales
$ 91,461.83
$ 6,665.90
$ 40,510.37
$22,798.61
$19,701.37
Interest
$ 1,641.31
$ 25.54
$ 79.39
$ 131.48
Commissions
37.70
Profit on deals
901.08
Total income
$ 94,041.92
$ 6,691.44
$ 40,510.37
$22,878.00
$19,832.85
Deductions: Compensation of officers -
Joseph Blachman
$12,913.40
$ 1,250.00
$ 2,600.00
Seymour Blachman
2,415.00
$1,020.00
625.00
1,300.00
Salaries and wages
5,841.92
$ 4,367.98
45.00
49.00
Rent
4,092.00
450.00
227.50
450.00
Interest
196.27
16.32
Taxes
2,357.29
113.55
63.40
1,254.74
Bad debts
16.00
Storage
880.00
Gas & Oil
311.95
Commissions: Joseph Blachman
7,275.07
Others
12,568.92
237.50
3,692.79
3,126.79
Stationery & Printing
153.92
8.79
10.10
6.06
Insurance
687.85
120.56
Traveling expense
1,918.82
55.03
Advertising
405.31
77.85
Telephone
1,719.82
Light
209.38
13,827.14
101.75
143.55
Freight
14,583.47
489.37
1,359.55
2,436.00
Auditing
4,255.00
45.00
120.00
5.00
Legal
969.72
35.00
22.85
Association dues
120.00
Licenses
50.00
Bank Charges
11.04
2.05
Miscellaneous
3,300.14
6.30
412.70
681.47
Total deductions
$77,244.29
$ 2,405.51
$18,227.44
$ 7,930.64
$12,308.10
Net income
16,797.63
4,285.93
22,282.93
14,947.36
7,524.75
*293 The Federal income tax returns filed for the different business entities for 1942 show the following: Petitioner
Blachman's,
Avon
beginning
end
Inc.
June 30,
of year
of year
end of year
1942
Liabilities
$12,621.57
$ 5,406.08
$ 100.99
$ 120.40
Capital stock
62,500.00
72,500.00
2,500.00
36,000.00
Surplus
34,863.31
36,972.29
5,070.82
14,947.36
J. Blachman's net worth as reflected in his individual books January 1, 1942, was $41,181.16. Approximately 50 per cent of the purchase invoices of Blachman, Inc., examined by one Diehl, a revenue agent, had been altered. A large percentage of the purchase invoices of Awon had been altered. In the majority of the cases, the purchase invoices were made out to petitioner and sometimes to J. Blachman. During the year 1942, petitioner, Blachman, Inc., Awon and J. Blachman were all dealing in the same kind of machinery, and had many customers in common. In many cases a single purchase invoice included numerous articles of machinery, particularly where the invoice represented a purchase at an auction sale or the purchase of an entire plant. Subsequent to the purchase, the various items *294 were marked as the property of one of the four business entities herein involved as J. Blachman or Seymour Blachman saw fit. There was no set policy in this regard. There were twenty-six transactions in the year 1942 where, upon the sale of machinery to customers, petitioner collected the proceeds and then distributed all or part of the proceeds to either J. Blachman, Blachman, Inc., or Awon. The books and records of petitioner as well as those of Blachman, Inc., Awon, and J. Blachman were kept in such a way that net profits could be and were shifted from one to the other as J. Blachman and Seymour Blachman saw fit. In the year 1942, there were hundreds of transactions on the books where this was done. In December 1947 a girl was employed by petitioner as stenographer, filing and inventory clerk, at 193 Centre Street. The bookkeeper told her to make room for forthcoming 1948 invoices and books, and she threw into the refuse can, for the rubbish collector, the contents of a cabinet, including correspondence, bill books, inventories and other books, covering approximately 1941 or 1942 and thereabouts. Subpoenas to J. Blachman to produce such books and records failed to produce *295 them at trial. In 1942, petitioner paid salaries of $12,913.40 to J. Blachman and $2,415 to Seymour Blachman. In addition, petitioner paid J. Blachman $7,275.07, classified as commissions on sales. In his determination of deficiency, respondent reduced petitioner's purchases in the amount of $2,170. None of the $2,170 was included in petitioner's closing inventory. The items were marked "sold" in the inventory stock book but were not included in the sales invoices for the year 1942. All of the items except one were marked "sold" in a "Perpetual Equipment Inventory Ledger." The normal handling of such sales would be to indicate the sales invoice number in the physical inventory book, but such numbers do not there appear. Petitioner posted directly from sales invoices to its sales account. Opinion The first issue is whether the respondent erred in attributing to the petitioner the net income of Awon, Blachman, Inc., and J. Blachman in 1942. It was stipulated at the hearing that if the respondent's determination of a deficiency is sustained on this issue that petitioner will be given credit on a Rule 50 computation for the $10,885.22 of income attributable to it from Awon. The *296 respondent's determination is presumed to be correct. Petitioner has attempted to overcome this presumption by showing the businesses were formed long before there was any question of a tax problem or any benefit arising tax-wise, that they kept separate books of account, filed independent returns, had their own employees and recorded their own sales. The respondent argues that the net profits of the businesses here involved constitute income taxable to petitioner within the purview of sections 22(a) and 45 of the Internal Revenue Code. [1] We have examined the record in this case with extreme care and have, upon all the evidence, come to the conclusion that petitioner has not shown that respondent erred in attributing to it the net income of the three other businesses, and that such income is taxable to petitioner under the broad scope of section 22(a). *297 In form there were four separate entities, all being engaged in the same business, at the same location, using the same equipment, with the same employees, and to a large extent supplying the same customers. All four businesses were controlled by J. Blachman and Seymour Blachman, father and son. The two operated the business and kept the books and records of all four businesses in such a way that the net profit of each could be manipulated as they saw fit, and, in general, so conducted the business that it is impossible to determine where the activities of one or the other begin and end. J. Blachman began business as a trucker in 1914. In 1926 he formed a partnership with one Sarah Baronowitz and engaged in the machinery business under the name of "Advance Machinery Exchange." He later purchased Sarah Baronowitz's interest and in 1928 incorporated the business under the name of "Advance Machinery Exchange, Inc.", the petitioner herein. Petitioner has operated continuously since that time. Blachman, Inc., was incorporated in 1930. to give the son, Seymour Blachman, an opportunity in business. J. Blachman resumed personal operation in used machinery in 1939. J. Blachman, in 1941, *298 caused the incorporation of Awon for the purpose of taking care of all "deals." The evidence is clear that petitioner served as the connecting link for the second-hand machinery business conducted by these four entities and the outside customers. Petitioner not only reported more sales than the other three entities combined but also transacted other business where the purchaser's name (petitioner) was stricken out and one of the other names inserted. The advertisement of petitioner's name on the office door and window also emphasizes this fact. After Blachman, Inc., was incorporated it was allowed to become dormant for a while in 1933 or 1934. The Social Security returns for Blachman, Inc., lists only Seymour Blachman as an employee for the first half of 1942. The return filed for the third quarter stated that the corporation was inactive at that time. No employees were listed thereon. No return was filed for the fourth quarter of 1942. Without employees, the sales invoice shows that this company had 47 separate sales transactions the last half of 1942. Although Awon was organized for the purpose of taking care of all "deals," such has not been the case. During 1942, Awon transacted *299 a substantial amount of business other than so-called "deals"; furthermore, the other three entities have also transacted business known as "deals." The other businesses have not been relieved of this type of business. Various books and records of the business, though subpoenaed, were not produced at trial. They were thrown away in December 1947, while this case was pending, by an office employee upon orders of the bookkeeper. Nothing in the record indicates that this was without the authority of the corporate officers, though both the president and vice-president of petitioner testified. The lack of these records obviously prevented full inspection of the matters herein involved. We agree with the principle announced in Paxson v. Commissioner, 144 Fed. (2d) 772, and cited with approval in Thornley v. Commissioner, 147 Fed. (2d) 416, where it is stated: "Taxation deals with realities not semblances; with substance not form. As we stated in Berwind v. Commissioner of Internal Revenue, 3 Cir., 137 F. (2d) 451, 453, 'It is a well settled rule of tax law that the substance of transactions will prevail over form, * * *.' The basis of the doctrine *300 is the commonsense view that taxation 'is an intensely practical matter.'" In reality, therefore, there is but one taxable entity, the petitioner, and all of the income of the business is attributable to it. R.O.H. Hill, Inc., 9 T.C. 153. The second issue is whether respondent correctly determined petitioner's invested capital for purposes of its excess profits tax credit. The adjustments involved the disallowance of $23,181.63, consisting of $22,500 of property (used machinery) purportedly paid in during 1940 for stock and $681.63 claimed as good will resulting from an exchange in 1928. Respondent disallowed both for lack of substantiation. Petitioner offered no evidence on the good will item; therefore, the respondent's position will be affirmed on that point. The only evidence offered on the question of $22,500 of property purportedly paid in during 1940 for stock was a copy of the minutes of a meeting of the stockholders of petitioner on January 6, 1941, and petitioner's tax return for 1940. (The tax return was submitted for the purpose of arguing that the respondent did not question the item in that year). There was no testimony offered that the property was *301 actually paid in, what the cost or value was, or what the fair market value of the stock was. Mere statements in a minute book are not sufficient proof of invested capital. The tax return was offered for a purpose other than proving cost or value. We sustain respondent's position for failure of proof. An inconsistent position by respondent in another year is no bar to a correct determination in the year before this Court. Woodside Cotton Mills Co., 13 B.T.A. 266. The petitioner contends that if respondent is correct in attributing to petitioner all of the income of the entities, he should be credited with the invested capital of Blachman, Inc., and the personal capital of J. Blachman. (Awon is not included in petitioner's contention because of the stipulation that he will not be charged with Awon's income, on a Rule 50 computation). On this issue, we have no alternative than to sustain the respondent. Petitioner's equity invested capital must be calculated under the provisions of section 718 of the Internal Revenue Code. [2] It is evident that petitioner's claim does not come within the statute. Equity invested capital of petitioner must consist *302 of money or property paid in for stock, or as paid-in surplus or as a contribution to capital; stock or surplus of another corporation or net worth of an individual can not be included. The third issue is whether respondent in determining invested capital correctly disallowed purchases in the amount of $2,170. This issue is explained in the deficiency notice in the following manner: "Purchases are reduced $2,170.00 representing the cost of certain machinery included therein but not included in closing inventory nor *303 in the amount of sales for the year." Petitioner's proof is not convincing. The evidence shows only that the articles had been purchased and marked "sold" on the inventory stock book; also, that all items except one appear marked "sold" on a "Perpetual Equipment Inventory Ledger," but such ledger is in no way connected, by the evidence, with the petitioner's method of handling its sales. There is no evidence that any of these items were included in sales or closing inventory. Without more evidence we sustain respondent on this issue. Petitioner presented no evidence on the fourth issue other than testimony that the items herein involved had been purchased and entered on the books. No explanation was offered why the amount of $2,833.75 should not be included in closing inventory. We, therefore, sustain the respondent on this issue. Other issues raised in the petition and conceded at the hearing will be given effect under Rule 50 computation. Decision will be entered under Rule 50. Footnotes
*. J. Blachman purchased 100 additional shares on October 1, 1942.↩
*. The word "deal" is used in this case to mean a business transaction where an outsider originally purchased a machine but petitioner or one of the others financed it.↩
1. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealing in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *
SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS. (Prior to amendment by section 128 (b) of Revenue Act of 1943). In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.↩
2. SEC. 718. EQUITY INVESTED CAPITAL. (a) DEFINITION. - The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b) - (1) Money paid in. - Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital; (2) property paid in. - Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * *↩